Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2760 | **DATE** | 6/30/2004 |
| **CASE TITLE** | Victor Lopez vs. Yessica Santillan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached memorandum opinion, the petitioner's verified petition for return of an abducted child is denied. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | JUN 30 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 34 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| MW | courtroom deputy's initials | 2004 JUN 30 PM 3:11 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VICTOR ZETINA LOPEZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 03 C 2760 |
| | ) |
| YESSICA GARDUNO SANTILLAN, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Petitioner Victor Zetina Lopez's ("Lopez") "Verified Petition For Return of an Abducted Child." For the reasons stated below, we deny the petition.

## BACKGROUND

Lopez claims that Respondent and himself resided at Respondent's parents' home in Mexico. Lopez had a child out of wedlock with Respondent. The child was born in Mexico on April 4, 2000. Lopez contends that Respondent moved to the United States without first informing Lopez of the planned move. Respondent has since married and the child resides with Respondent and her husband in Wisconsin.

1

According to Lopez, he lived with Respondent at her parents' residence "between April 4, 2000, and April 27, 2002." (P SF 10). Lopez also claims that Respondent and the child left Mexico on or about April 27, 2002. (P SF 14). Lopez contends that he "fully and actually exercised his *patria potestad* rights over [the child]" until approximately April 27, 2002. (P SF 13).

On the other hand, Respondent asserts that she left Mexico with her son on November 20, 2001 and asserts that Lopez ceased to reside in her parents' residence in Mexico in October of 2001. ( R P SF 33). Respondent also claims that Lopez ceased to exercise any parental rights over the child in October of 2001. ( R SF 33, 34).

On March 9, 2004, we conducted an evidentiary hearing. We also gave Lopez until April 8, 2004, to submit any memoranda or evidentiary affidavits in support of his position. Lopez declined to submit any evidentiary affidavits in support of his position.

## DISCUSSION

Lopez brought the instant petition alleging violations of the Hague Convention ("Convention"), as implemented in the United States by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601*et seq.* The ICARA provides in part as follows:

b) Petitions
Any person seeking to initiate judicial proceedings under the Convention for

the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed. . . .

(e) Burdens of proof

**(1)** A petitioner in an action brought under subsection (b) of this section shall establish by a preponderance of the evidence--

**(A)** in the case of an action for the return of a child, that the child has been wrongfully removed or retained within the meaning of the Convention; and

**(B)** in the case of an action for arrangements for organizing or securing the effective exercise of rights of access, that the petitioner has such rights.

**(2)** In the case of an action for the return of a child, a respondent who opposes the return of the child has the burden of establishing--

**(A)** by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; and

**(B)** by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies. . . .

42 U.S.C. § 11603(b); (e). Respondent argues that an exception listed in article 13(a) of the Convention applies in this instance. Article 13(a) of the Convention states that a court is not required "to order the child's return if the person opposing the return establishes that 'the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention . . . .'" *Furnes v. Reeves*, 362 F.3d 702, 711-12 (11th Cir. 2004)(quoting in part Convention, Art. 13(a).).

3

The parties in the instant action disagree as to the time of removal. Lopez claims that Respondent and the child left Mexico on or about April 27, 2002. Respondent claims that she left Mexico with her son on November 20, 2001. Respondent has presented ample credible evidence in the form of testimony and submitted documents in support her position that she left Mexico in November of 2001. Lopez, on the other hand, has failed to come forth with any evidence, whatsoever, to support his claims. We gave Lopez an opportunity to provide an affidavit to support his position and he declined to submit any affidavit. Instead he merely submitted selected portions of the evidentiary hearing transcript. In fact, at the evidentiary hearing, counsel for Lopez stipulated that Respondent was already in the United States and took the child to a clinic in Chicago, Illinois in December of 2001. (Trans. 37).

The next issue in this action is whether or not there is evidence that on November 20, 2001, Lopez was exercising his rights of parental custody. First of all, Lopez's assertion in his briefs that he was exercising his parental rights until April of 2002 are suspect because, as indicated above, there is no evidence that would indicate that Respondent and the child were in Mexico at that time, or that Lopez had contact with Respondent and the child. In addition, there was ample testimony indicating that Lopez was not exercising his parental custody rights when

Respondent left Mexico with the child. Respondent's brother testified at the evidentiary hearing. He stated that Respondent came to the United States in November of 2001.

Respondent also testified at the evidentiary hearing. She indicated that she spoke to Lopez on October 12, 2001, and told Lopez that he was not meeting his obligations as a husband or a father. (Trans. 34). Respondent testified that Lopez was not at home at night because he went drinking with his friends. (Trans. 41). Respondent indicated that after October 12, 2001, Lopez returned to her parents' house, but only did so late at night. (Trans. 44). She testified repeatedly that on such occasions, Lopez would yell at her from outside the home and threaten to kill her and kidnap their child and told her that "[h]e knew every step [she] took." (Trans. 44, 51, 54). When asked if Lopez asked permission to come into the residence and see his child, Respondent testified that she told Lopez to come back during the daytime when the child was awake. (Trans. 45). Respondent testified that on one occasion when Lopez visited the residence, he beat her. (Trans. 54). Respondent testified that after October 12, 2001, she changed the locks on the doors to her parents' residence because she feared for her safety because of Lopez's threats and abuse. (Trans. 53).

It is clear from the record that after October 12, 2001, Lopez ceased to

exercise his parental custody rights. The evidence clearly indicates that even before that date, Lopez was continually absent and was not offering financial support to his family. After October 12, 2001, his attempts to interact with his family cannot in any way be deemed as exercising his parental custody rights. There is uncontroverted testimony that on his only visits to Respondent's parents' residence, which were late at night, he threatened to kill Respondent, threatened to kidnap the child, and on one occasion physically assaulted Respondent. Such conduct cannot be considered an attempt to exercise parental custody rights in any way.

## CONCLUSION

Based on the foregoing analysis, we deny Lopez's "Verified Petition For Return of an Abducted Child."

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 30, 2004